Donohue, J.
This action was tried before me, jury-waived, on March 22, 1994. By agreement of the parties, this case was tried as an action seeking relief in the form of mandamus[2] for an alleged denial of the plaintiffs rights under G.L.c. 32B, §9A.[3] For the reasons outlined below, the plaintiffs complaint is DISMISSED.
FINDINGS OF FACT
Having tried this case, jury waived, and having reviewed all of the exhibits put into evidence, I make the following findings of fact:
The plaintiff, Laurent E. McDonald (“McDonald”) was a firefighter for the Town of Sturbridge (the ‘Town”) for 26 years. For most of that time, McDonald was covered by the town’s health insurance plan. Accordingly, he paid the employee’s portion of the premium for said plan. In 1980, however, McDonald decided that he could obtain better coverage under his wife’s health insurance plan. McDonald, therefore, asked to be removed from the town’s plan and was so removed. From this point forward he paid no additional premiums.
In 1982, McDonald was injured when he fell through a roof of a house while fighting a fire. On May 3, 1984, as a result of this injury, McDonald received an involuntary disability retirement. At the time of his retirement, McDonald was still not a member of the town’s health insurance plan.
According to McDonald, however, he had asked town officials to place him back on the town’s health insurance plan approximately four months before his retirement. Specifically, McDonald claimed to have spoken to the executive secretary of the retirement board, Richard Genereux (“Genereux”), the town manager, Donald Jacobs (“Jacobs”), and his union steward, Elmer Hicks (“Hicks"). According to McDonald’s testimony, Genereux told McDonald to speak to Jacobs and Jacobs told him he would look into the matter. At no time did McDonald attempt to contact the town’s treasurer, Ronald Trembly, despite the fact that McDonald was aware that the treasurer was responsible for enrolling town employees in the town’s insurance plan.
Jacobs denied that he had spoken with McDonald prior to McDonald’s retirement and Genereux could not remember with any certainty when his conversation with McDonald took place. Hicks remembered his conversation with McDonald and said that he brought the issue to Jacobs’s attention during collective bargaining negotiations. Jacobs did not recall if McDonald’s status with respect to the town’s insurance plan was ever part of the collective bargaining negotiations and the final agreement contains no mention of the issue.
In any event, prior to his retirement, McDonald made absolutely no written request to anyone asking to be returned to the town’s insurance plan. He filled out no insurance forms, made no written application to rejoin the town’s plan and gave no written indication as to his preference of insurance carrier. As a result, as mentioned above, McDonald was not a member of the town’s insurance plan at the time of his retirement in 1984.
In 1964, the town voted to adopt the provisions of G.L.c. 32B, §9A which provides that, upon a vote by a town to adopt said section, the town shall pay 50 percent of the insurance premiums for retired employees.[4] Section 9A is read in conjunction with section 9 which allows a retired employee to “continue” his health insurance plan upon retirement by either (1) paying the entire premium for the plan or, (2) by paying 50 percent of the premium if the town has adopted §9A. Since adopting §9A the town has never failed to pay 50 percent of a retired employee’s insurance premium if the employee was a member of the insurance plan at the time of his retirement.
*87 Following his retirement, McDonald made repeated requests to a variety of town officials, mostly orally but some in writing, to be allowed to rejoin the town’s health insurance plan and to have the town pay 50 percent of his premiums. McDonald’s most recent request was made to Southbridge’s current town manager, Florence Chandler (“Chandler”). Chandler conducted a thorough review of McDonald’s employment file and found no indication that McDonald had requested, in writing, to be placed back on the town’s insurance prior to his retirement. Chandler also consulted with a member of the Group Insurance Commission to find out how such cases were handled. As a result of her investigations, Chandler concluded that, since McDonald had not been a member of the town’s insurance plan at the time of his retirement, the town was not obliged to allow McDonald to rejoin the plan nor was the town obliged, by law, to pay 50 percent of his premiums. Chandler informed McDonald of her conclusions and told him that she thought it would set a “bad precedent” for the town to allow him to rejoin the health insurance plan.
RULINGS OF LAW
Section 9A of G.L.c. 32B provides that:
A county, except Worcester county, by vote of the county commissioners, a city having a Plan D or Plan E charter by majority vote of its city council, any other city by vote of its city council, approved by the mayor, and a district by vote of the district at a district meeting, may provide that it will pay one-half of the amount of the premium to be paid by a retired employee under the provisions of the first sentence of section nine. A town shall provide for such payment if a majority of the votes cast in answer to the following question which shall be printed on the official ballot to be used at an election in said town is in the affirmative: “Shall the town pay one-half the premium costs payable by a retired employee for group life insurance and for group general or blanket hospital, surgical, medical, dental and other health insurance?”
The defendants make much of the fact that, at the time the Town of Southbridge voted to adopt §9A, the second sentence read that a “town may provide for such payment. . .” rather than the current language that a “town shall provide for such payment. . .” The town has argued that since the voters of the town never approved the newer version of §9A the town cannot be bound by the new language. The court rejects the argument for two reasons. First, the 1973 amendment at issue did not, in any way, change the language of the ballot question which was to be presented to the voters. The question which was put to the voters of Southbridge was: “Shall the town pay one-half the premium costs payable by a retired employee for group life insurance and for group general or blanket hospital, surgical and medical insurance?”[5] Since the word “shall” was clearly approved by the voters when the town adopted §9A, the town cannot now argue that the voters were only approving the portion of §9A which read “may.”
Second, and perhaps more importantly, the town clearly acknowledged that, in cases where the retired employee has met all of the other requirements of G.L.c. 32B,[6] it has never failed to pay 50 percent of the retired employee’s premiums. Indeed, at trial, Jon LaFleche, Southbridge’s current Finance Director and Treasurer, testified that the town always paid “the 50 percent” if the employee was in the program when he retired because the town “always met [its] obligations under the law.” It is irrelevant whether this statement should be considered a binding admission on the town; the practical result is that the town has always acted as if it is bound by the language of the 1973 amendment. Under the right circumstances, then, a plaintiff who had met all of the preconditions for §32B but was still refused the benefits of §32B might have a valid argument that the town’s actions were arbitrary and capricious. This is not, however, such a case.
It is undisputed that McDonald was not, at the time of his disability retirement, enrolled in the town’s health insurance plan. It follows that McDonald would not, at first glance, be entitled to rejoin the town’s insurance plan or to have 50 percent of his premiums paid by the town.[7]
As a matter of equity, however, McDonald may still be entitled to relief if he can prove that, but for the town’s negligence, he would have been enrolled in the town’s insurance plan at the time of his retirement. See Commonwealth v. Langton, 389 Mass. 1001, 1001 (1983) (“Allowance of relief in the nature of mandamus is controlled by equitable principles”).
Ultimately, then, this case turns on whether McDonald has met his burden of proving that the town was negligent in failing to restore him to the town’s insurance plan prior to his retirement. Cavanaugh v. U.S., 640 F.Supp. 437 (D.Mass. 1986) (plaintiff has burden of proof in action for mandamus). Both parties have presented testimony on this point. McDonald testified that, prior to his retirement, he spoke to Genereux, Jacobs and Hicks about being returned to the town’s insurance plan.[8] According to McDonald’s own testimony, however, he made no written request to rejoin the town’s plan, filled out no applications and gave no written indication as to which insurance carrier he preferred.
The plaintiff argues that, under G.L.c. 32B, §4 he was not required to put his request for coverage in writing but, to the contrary, that the town was required to include him in the town’s plan unless he requested, in writing, not to be so included. While McDonald’s argument correctly states the law under c. 32B, §4, it ignores one critical fact in this case: McDonald had been covered by the town’s plan for *88 approximately 20 years until he himself asked to be taken off the plan. The parties do not dispute that, in 1980, McDonald asked to be taken off the town’s insurance plan and that he was indeed taken off the plan pursuant to this request. McDonald did not from this point on pay any premiums toward the town’s plan. Clearly, once an employee has asked to be removed from the town’s plan, and is so removed, the presumption of automatic coverage contained in §4 is no longer applicable.
Additionally, despite McDonald’s claims to the contrary, by 1984 some writing would have been required to return him to the town’s plan even if it was no more than a form indicating his choice of insurance carrier.
Finally, both Genereux and Jacobs testified that, had they spoken to McDonald prior to his retirement they would have referred him to the town treasurer, who was responsible for enrolling employees in the town's insurance plan. McDonald himself testified that, even though he was aware that the town treasurer was responsible for Blue Cross/Blue Shield enrollments, he never contacted then-treasurer Trem-bly. Additionally, Jacobs denied ever speaking with McDonald about health insurance prior to McDonald’s retirement. Genereux could not recall with any certainly if his conversations took place before or after McDonald’s retirement.
In the end, given the conflicting testimony on this issue, the court is left with insufficient evidence to conclude that McDonald’s requests came before his retirement. Moreover, it seems that McDonald had some duty to put his request in writing, or at very least to make sure that it was made to the proper party. The evidence shows that he did neither. Accordingly, McDonald has failed to prove that the town was in any way negligent in failing to return him to the town’s insurance plan prior to the time of his retirement. This being the case, his action must fail.
ORDER
For the reasons outlined above the plaintiffs action is DISMISSED.

 Mandamus relief is available pursuant to G.L.c. 249, §5.

 The plaintiffs complaint had characterized the plaintiffs action as one pursuant to G.L.c. 12, §§11H and 11I, the state’s civil rights statute.

 The town disputes the use of the word “shall” as opposed to “may” which originally appeared in §9A This is discussed in greater detail in the “Rulings of Law” portion of this opinion.

 Ironically, in all of their memoranda, the defendants include the word “dental” in the wording of the statute they say should apply. The word “dental” was added in 1975, two years after the addition of the amendment which the defendant’s do contest.

 Section 9 provides that a retired employee’s health insurance shall be “continued” pursuant to the provisions of §§9, 9A and 9E. The plain meaning of the word “continued” is that the employee must have been participating in the town’s insurance plan prior to retirement in order for such a plan to be “continued.”

 The court notes that there is nothing within G.L.c. 32B which would prevent the town from paying premiums for a retired employee. There is, however, nothing which requires the town to do so. This being the case, the court need not address McDonald’s contention that the decision not to reinstate him in the insurance plan is “arbitrary” or “capricious.”

 Hicks testified that, prior to McDonald’s retirement, he asked Jacobs (during collective bargaining negotiations) to return McDonald to the town’s health insurance plan. Jacobs had no recollection of such discussions and no formal grievance was ever filed on McDonald’s behalf. Additionally, there are no notes concerning these discussions nor does the final collective bargaining agreement make mention of this issue.